NOT DESIGNATED FOR PUBLICATION

Nos. 113,127
113,128

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROY A. SHAW,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; DAVID L. DAHL and JOHN J. KISNER, JR., judges. Opinion filed February 19, 2016. Affirmed.


*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.


*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.


*Per Curiam*:  In this consolidated appeal, Roy A. Shaw appeals from orders entered by the Sedgwick County District Court in two cases. In 14CR164 Shaw contends that the district court abused its discretion when it revoked his probation. In 14CR1097 Shaw contends, first, that the district court abused its discretion when it denied his presentence motion to withdraw his guilty plea, and, second, that the district court erred when it increased his sentence using prior convictions not proved to a jury beyond a reasonable doubt. Finding no error, we affirm the district court's challenged decisions.

1

FACTUAL AND PROCEDURAL BACKGROUND

On January 24, 2014, the State, in case 14CR164, charged Shaw with theft for stealing three boxes of Obsession cologne from a JC Penney store. The value of the property was far less than $1000, and authorities recovered the property as soon as Shaw left the store. However, the State charged the theft as a severity level 9 nonperson felony because Shaw had two or more prior convictions of theft. The parties soon reached a plea agreement. On February 21, 2014, Shaw pled guilty as charged. The State agreed to join Shaw in requesting that the sentencing judge impose the mitigated sentence in the applicable sentencing guidelines grid block and, because the parties expected that the grid block would provide for presumptive prison, grant a dispositional departure to probation. The district court specifically informed Shaw that his criminal history probably would call for presumptive prison. Shaw said he understood. The district court also advised Shaw that agreements on sentencing were recommendations the sentencing court could reject. Again, Shaw confirmed that he understood.

District Judge John J. Kisner, Jr., called the case for sentencing on April 4, 2014. As the parties had expected, Shaw's presentence investigation report indicated that Shaw's criminal history score was B, which placed him in the 9-B presumptive prison grid block. The judge noted that Shaw's LSI-R score suggested that he was at a high risk for recidivism. The State then complied with the plea agreement:  it requested that the judge impose the mitigated sentence in the grid block, a term of 13 months, and depart to probation because Shaw had timely accepted responsibility and because the loss was temporary and less than typical for a felony.

Before hearing Shaw's counsel and Shaw's allocution, the judge gave voice to some reservations about probation. Judge Kisner pointed out that Shaw's lengthy criminal history included several felony theft convictions, aggravated escape, burglary, making a

2

false writing, and deprivation of property. Nevertheless, the judge informed Shaw that he would keep an open mind and wanted to hear what Shaw had to say.

Defense counsel advanced arguments that diminished, somewhat, Shaw's culpability and emphasized the positive steps Shaw had taken in his job hunting efforts. Counsel agreed with the State's request for a "no tolerance" approach to probation if the judge granted it. Shaw then directly addressed the court, explaining that he only stole because he had no job and no money but promising that he would comply if the judge gave him a chance at probation.

Initially, Judge Kisner was moved, but not in the direction Shaw desired. The judge said he intended to depart downward to a 6-month prison sentence but he would deny probation because of all of the thefts on Shaw's record. Shaw asked for and received an additional opportunity to address the court. Shaw implored Judge Kisner to grant probation, explaining that he had a good chance at a job and he was changed man, pleading "please help me, please, so I can show you that I'm being honest with you." Judge Kisner was further moved; he allowed Shaw to elect whether he preferred to go to prison for a reduced term of 6 months, or be granted probation with 60 days of shock time subject to work release on an underlying grid block 9-B aggravated sentence of 15 months in prison. Shaw continued to beg for outright probation but to no further avail. Finally, Shaw opted for probation including the shock time with work release and a 15-month underlying sentence, which Judge Kisner duly imposed.

It appears that Shaw's work release was promptly put into place. It began on Tuesday, April 8, 2014. But just 2 days later Shaw left the jail on a "clothing" pass, never to voluntarily return. The State, in case 14CR1097, charged Shaw with aggravated escape from custody as of April 10, 2014, a severity level 8 nonperson felony. Authorities apprehended Shaw in early June 2014. The district court appointed Charles Steve Osburn, the Sedgwick County chief public defender, to again represent Shaw in the new case and

to continue his prior representation of Shaw in 14CR164 in newly filed probation revocation proceedings.

Shaw and the State again reached a plea agreement. On June 24, 2014, before Judge David L. Dahl, Shaw pled guilty as charged to aggravated escape. The State agreed to recommend a downward durational departure sentence of 9 months. The State confirmed that it was seeking a prison sentence in 14CR1097 and revocation of probation in 14CR164; but it acknowledged that Shaw was free to argue for probation and/or departure in each case and, if probation was revoked in 14CR164, a reduced prison sentence. The court set sentencing for August 13, 2014, before Judge Kisner. The court subsequently rescheduled the sentencing at Osburn's request to allow more time for Shaw to obtain a new drug treatment evaluation.

Prior to sentencing in 14CR1097, Shaw filed a pro se motion to withdraw his plea, alleging that he did not have sufficient time to consider the plea agreement before entering the plea. The district court appointed Shaw a new attorney. The district judge who conducted the plea hearing, Judge Dahl, heard Shaw's motion on December 3, 2014. Shaw and his former attorney, Osburn, testified.

Shaw contended that he wanted to withdraw his plea to the escape charge because after pleading he began to fear that Osburn had misled him. Shaw claimed Osburn assured him he would be placed in drug treatment in his cases by saying "it was a 95 percent sure thing that I would get drug treatment, and that is why I entered the plea." Shaw asserted that as his sentencing and revocation hearings approached he recalled that Judge Kisner had not approved the agreed-upon sentencing recommendations in his theft case. That caused him to file his motion to withdraw the plea.

Osburn denied that he had ever promised Shaw there was a 95 percent chance he would get drug treatment. In fact, Osburn recalled telling Shaw that probation was

4

unlikely, stating:  "I told him Judge Kisner had been reluctant to grant him probation and it was unlikely that he was going to get another shot, but we would ask. But I said it was unlikely." Osburn obtained a drug evaluation because substance abuse was a "soft spot" for Judge Kisner and a bid for treatment might appeal to him. Osburn recalled that he and Shaw had discussed Shaw's poor chances at probation prior to Shaw's plea hearing.

After hearing testimony and counsels' arguments, Judge Dahl concluded that Shaw failed to show good cause to withdraw the plea and denied his motion. Judge Dahl announced his decision in detail, finding that Osburn had represented Shaw competently, that Osburn had not misled or coerced Shaw into the plea, and that from the documents in the file and the plea hearing record Shaw had made his plea fairly and understandingly. Regarding credibility, the judge addressed Shaw directly:  "[Osburn] never promised you probation. He never promised or said there was a 95 percent chance of drug treatment. And that is what he says, and that is credible to me."

The parties then appeared before Judge Kisner for a combined sentencing and revocation hearing. Shaw requested that the court reinstate his probation in 14CR164 and grant a dispositional departure to probation in 14CR1097. Judge Kisner revoked Shaw's probation in 14CR164 on the ground that Shaw had a new felony conviction and remanded him to prison for the 15-month term originally imposed. In 14CR1097, the judge sentenced Shaw to 9 months in prison (a downward departure of 9 months from the standard sentence in grid box 9-B) consecutive to the sentence in 14CR164. Judge Kisner denied Shaw's request for a dispositional departure to probation for drug treatment and remanded him to prison for a total term of 24 months.

Shaw filed timely appeals from the denial of his motion to withdraw his guilty plea and sentencing 14CR1097 and the denial of probation reinstatement in 14CR164.

ANALYSIS

We consider Shaw's issues on appeal in the order in which he briefed them rather than chronologically by case number. There is logic to that order: If we were to find that, as a threshold matter, the district court erred in denying the motion to withdraw the guilty plea in the more recent case, then the new felony grounds for the revocation of probation in the earlier case would have been invalid.

*The District Court Did Not Err When It Denied Shaw's Motion to Withdraw Plea in 14CR1097*

Under K.S.A. 2015 Supp. 22-3210(d)(1), "[a] plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." The trial court should evaluate the following three factors, commonly referred to as the *Edgar* factors, in determining whether a defendant has demonstrated good cause to withdraw his or her plea before sentencing: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006); see *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014); *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010). However, a court should not apply these factors mechanically or to the exclusion of other factors. *Fritz*, 299 Kan. at 154 (citing *State v. Garcia*, 295 Kan. 53, 63, 283 P.3d 165 [2012]).

This court reviews the denial of a presentence motion to withdraw a plea for abuse of discretion. *Fritz*, 299 Kan. at 154.

"'Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion;

6

or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.'" *State v. Macias-Medina*, 293 Kan. 833, 836, 268 P.3d 1201 (quoting *State v. Ward*, 292 Kan. 541. Syl. ¶ 3, 256 P.3d 801 [2011, *cert. denied* 132 S. Ct. 1594 [2012]).

The movant has the burden of proving an abuse of discretion. *Fritz*, 299 Kan. at 154. This court does not reweigh evidence or assess witness credibility. *State v. Hartpence*, 30 Kan. App. 2d 486, 493, 42 P.3d 1197 (2002). A significant part of evaluating testimony depends upon seeing the witnesses on the stand and assessing how they respond to the questions. *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008) ("[T]he ability to observe the declarant is an important factor in determining whether he or she is being truthful."). We generally defer to the trial court's factual findings so long as those findings are supported by substantial competent evidence. See *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

Shaw argues that he should have been permitted to withdraw his plea in 14CR1097 because he was pressured into accepting the plea by his attorney's alleged assurance that counsel "was ninety-five percent sure that the district court would impose probation and drug treatment." Additionally, Shaw contends he was not given adequate time to consider the agreement before he entered it. Framing Shaw's arguments in terms of the *Edgar* factors, Shaw claims that he was "misled, coerced, mistreated, or unfairly taken advantage of" to such an extent that his plea was not voluntarily made.

Shaw relies on *State v. Denmark-Wagner*, 292 Kan. 870, 877, 258 P.3d 960 (2011), to advance his argument. In *Denmark-Wagner* the defendant argued that psychological pressure from his mother and sister caused him to enter his plea. The Supreme Court denied relief, noting that Kansas courts have repeatedly held that psychological pressure to take a plea does not, in and of itself, vitiate the voluntariness of the resulting plea, noting case holdings in similar circumstances in *Wippel v. State*, 203

Kan. 207, 209, 453 P.2d 43 (1969) and *State v. Bartlow*, No. 96,933, 2008 WL 2051672, at *3-4 (Kan. App.) (unpublished opinion), *rev. denied* 286 Kan. 1180 (2008). *Denmark-Wagner*, 292 Kan. at 876-77. The *Denmark-Wagner* court cited this court's *Bartlow* decision with favor, referring to its holding in the following:

> "In *Bartlow*, the defendant argued that he demonstrated good cause to withdraw his plea before sentencing because his parents had pressured him into taking the plea. The Court of Appeals held that, as there was a thorough plea hearing during which the defendant was informed of his rights, the defendant stated that he understood his rights, and the defendant stated he was not coerced into pleading guilty, the plea would not be disturbed because of a defendant's mere '"change of mind."' 2008 WL 2051672, at *3. Absent any 'evidence his plea was made unwillingly or without an understanding of the consequences,' such a change of mind was not enough to show good cause. 2008 WL 2051672 at *4. Pressure by the defendant's parents was insufficient. 2008 WL 2051672, at *4." *Denmark-Wagner*, 292 Kan. at 877.

Shaw argues that the pressure on him was greater than that on Denmark-Wagner because Osburn, his own attorney, pressured and misled him. Shaw argues that such a claim, if true, would fall squarely within the second *Edgar* factor (*i.e.*, whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of). Shaw's problem with this argument is that Judge Dahl specifically found that Osburn did not mislead or coerce Shaw into the plea because Osburn did not make the "95 percent" statement Shaw claimed. This finding is supported by substantial competent evidence. Judge Dahl observed Shaw and Osburn when they testified. Osburn denied making the statement and recalled that, in fact, he had advised Shaw that probation was unlikely.

In addition, Judge Dahl had conducted the plea hearing during which Shaw acknowledged that he had signed plea documents advising him of his rights, that he had reviewed the documents with Osburn, that Osburn had left them with him for some days before the plea hearing, and that he did review them himself before pleading guilty.

8

Moreover, Judge Dahl observed Shaw when he entered his plea. The record confirms that Judge Dahl engaged in an extensive plea colloquy with Shaw where they discussed the rights Shaw could pursue if he did not enter a plea, the rights he gave up if he did plead, the range of consequences that could follow his plea, his understanding of those rights and consequences, his satisfaction with Osburn, that he was not coerced or threatened into pleading, and that he was not guaranteed probation. All of Shaw's responses and statements at the plea hearing are consistent with Judge Dahl's conclusions at the plea withdrawal hearing that Shaw was not misled or coerced into entering his plea, Shaw received the competent assistance of counsel, and Shaw entered his plea fairly and with proper understanding.

Further substantial competent evidence supports Judge Dahl's credibility findings. Shaw contradicted himself during his plea withdrawal hearing testimony. Shaw testified that he was first shown the plea agreement documents on the same day he entered his plea. Upon further questioning, though, Shaw acknowledged that Osburn presented the agreement documents to him at the jail some time before the plea hearing, reviewed them with him, and left him copies which he read through on his own in the days leading up to the plea hearing. Shaw's own testimony, both at the plea hearing and the plea withdrawal hearing, did not support his claim that he was not provided adequate time to consider the entry of his plea. In addition, the district court's determination that Osburn was credible and Shaw was not on the "95 percent" assurance claim is supported by substantial competent evidence.

In light of the overwhelming evidence that Shaw's plea was entered knowingly and voluntarily after he received accurate advice from counsel, had ample opportunity to consider the agreement, and engaged in a detailed colloquy with the district court at his plea hearing confirming in all his answers that his plea was knowing and voluntary, we conclude that the district court did not abuse its discretion when it denied Shaw's motion to withdraw his plea.

9

*The District Court Did Not Err When It Refused To Reinstate Probation In 14CR164*

Shaw asserts that the district court erred when it revoked his probation in 14CR164. This court reviews a district court's revocation of probation for an abuse of discretion. See *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). As we noted above, the party asserting abuse of discretion bears the burden of proving such abuse. Historically, once the State has proven a violation of the conditions of probation, probation revocation is within the sound discretion of the district court. *State v. Graham*, 272 Kan. 2, 4, 30 P.3d 310 (2001). Although the legislature has now placed limitations on the district court's power to revoke probation, those limitations do not apply in Shaw's situation. See K.S.A. 2015 Supp. 22-3716(c)(8) which specifically provides that if the offender commits a new felony while on probation, as Shaw did as evidenced by his conviction in 14CR1097, the district court can revoke probation and remand the offender to prison without having previously imposed an intermediate sanction.

Shaw asserts that the district court abused its discretion when it revoked his probation, but he does not explain how the court did so. Rather, he argues that reinstating probation would have allowed him to obtain drug treatment and that "the mitigating circumstances" he demonstrated outweighed the severity of his probation violation. That is not the issue we consider on review of a probation revocation. We consider whether the district court abused its discretion. We find from the record that the district court's decision to revoke Shaw's probation was not arbitrary, fanciful, or unreasonable, *i.e.*, such that no reasonable person would have adopted the position of the district court. Nor was the court's decision to revoke based on an error of law or fact. The district court did not abuse its discretion when it revoked Shaw's probation based on his new felony conviction.

10

*The District Court Did Not Err in Its Use of Shaw's Criminal History in Shaw's Sentencing in 14CR1097*

Shaw contends that the district court erred when it increased his sentence in 14CR1097 based on a criminal history that included convictions not set out in the charging document or proved to a jury beyond a reasonable doubt. He relies on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), for support. However, Shaw's claim that the court increased his sentence is not completely accurate: the district court reduced Shaw's sentence to 9 months, which happened to be the aggravated term within grid block 8-I, the grid block that would have applied had the district court refused to rely on Shaw's prior conviction criminal history. See K.S.A. 2015 Supp. 21-6804; K.S.A. 2015 Supp. 21-6820(c)(1)(No appeal from presumptive sentence). Nevertheless, it is correct that the district court's criminal history finding moved Shaw into the presumptive prison grid block 8-B, although we fail to see how even that finding prejudiced Shaw in light of the sentencing facts in this case.

At any rate, Shaw acknowledges that the Kansas Supreme Court has rejected essentially the same *Apprendi* contentions he now advances. See *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). Nevertheless, Shaw includes this issue "to preserve [it] for federal review." Our Supreme Court has "repeatedly confirmed *Ivory's* holding on numerous occasions thereafter." *State v. Castleberry*, 301 Kan. 170, 191, 339 P.3d 795 (2014). Our Supreme Court has shown no indication that it is reconsidering *Ivory*, and we are bound by its precedent. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). We affirm the district court on this issue.

Affirmed.