No. 85,098

STATE OF KANSAS, *Appellee*, v. RONALD GRAHAM, *Appellant*.

(30 P.3d 310)

Opinion filed September 14, 2001.

*Randall L. Hodgkinson,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Tony R. Cruz,* assistant county attorney, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals the district court's revocation of his probation and his sentence of 15 years to life in prison on a conviction of possession of cocaine, a class B felony due to a prior conviction. Defendant claims the trial court erred (1) in finding he violated his probation; (2) in failing to consider the factors set out in K.S.A. 21-4601 and K.S.A. 21-4606 when imposing a sentence greater than the statutory minimum sentence; and (3) in refusing to modify his sentence as recommended by the Topeka Correctional Facility (TCF). Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1).

Graham's original convictions of possession of methamphetamine, possession of marijuana, and possession of cocaine were affirmed in *State v. Graham,* 244 Kan. 194, 768 P.2d 259 (1989). Graham's sentence was later commuted to 15 years to life by Governor Finney. In 1998, as a result of a K.S.A. 60-1507 action which alleged ineffective counsel in allowing an uncounseled Arkansas conviction to be considered in determining Graham's sentence, this court reversed the judgment of sentence and remanded the case for resentencing.

Graham, who had served 10 years of his original sentence, was resentenced for possession of cocaine, a class B felony. The sentence for a class B felony committed in 1989 was a minimum term of 5 to 15 years and a maximum term of 20 years to life. K.S.A. 21-4501(b) (Ensley 1988). The judge imposed a 15-year to life sen-

tence. After resentencing Graham, the district court suspended imposition of the sentence and placed Graham on 1 year of probation, supervised by court services. Later, the district court, after finding that Graham had violated the terms of his probation, revoked Graham's probation. Graham appealed. The basis for revoking Graham's probation was that while on probation Graham had twice tested positive for narcotics and had been arrested for possession of controlled substances. Graham contends that the district court improperly considered documents that were not admitted into evidence in finding that he had violated the terms of his probation.

A probationer may not have his or her probation revoked unless it is made to appear that the probationer has failed to comply with the conditions of probation. *Swope v. Musser*, 223 Kan. 133, Syl. ¶ 2, 573 P.2d 587 (1977). Once there has been evidence of a violation of the conditions on which probation was granted, revocation is in the sound discretion of the district court. 223 Kan. at 136.

On the first check, Graham tested positive for marijuana and amphetamine. To confirm the results, Michael Tyson, Graham's probation officer, poured Graham's urine sample from a styrofoam cup into another container and sent the sample to LabCorp for analysis. LabCorp confirmed Tyson's finding. During a follow-up visit, Tyson discussed the LabCorp test results with Graham and recommended that Graham enter a chemical dependency treatment program. Graham agreed to enter a program and submitted to an assessment process at Charter Hospital. Graham did not enter treatment.

At a subsequent check, Graham again tested positive for amphetamine and marijuana. Tyson confronted Graham with the results. Graham denied using prohibited substances. To obtain confirmation of his test results, Tyson sent the second sample to LabCorp. LabCorp determined that there was an insufficient amount of urine in that sample to test for amphetamine. The specimen was sufficient to test for marijuana. LabCorp confirmed the presence of marijuana in the urine. Tyson informed Graham of the results of the second confirmation test, and Tyson filed a motion to revoke Graham's probation.

At the probation revocation hearing Tyson, who was certified to conduct urinalysis testing, testified concerning the two occasions Graham had field-tested positive for amphetamine and marijuana. Tyson stated that contamination of the testing materials could invalidate the result of a urine test and that great caution was necessary in collecting and testing a sample. Tyson testified that Graham urinated into a styrofoam cup that was setting on a shelf in the specimen collection room. Tyson stated that the cup was not individually wrapped or otherwise protected from contamination. Although discussed, the LabCorp reports were not submitted for admission as evidence.

The district court found that on two occasions, Graham's urine had tested positive for prohibited substances. Usage of controlled substances was prohibited by the conditions of Graham's probation. Once the State presents prima facie proof of a violation of a condition of probation, the defendant has the burden of coming forward with evidence to meet and overcome this prima facie proof. *State v. Miller*, 20 Kan. App. 2d 378, Syl. ¶ 10, 888 P.2d 399 (1995). Two positive results on separate occasions for prohibited substances establishes sufficient evidence to support the district court's decision to revoke Graham's probation.

Graham first argues that the lab tests were not reliable because the styrofoam cup, which was not wrapped to protect against contamination, could have been contaminated. Graham then contends that the LabCorp results, which were testified to by Tyson, were inadmissible hearsay and were erroneously considered by the district court. Graham bases this complaint on the statutory requirements for the admission of written statements at revocation hearings and on the constitutional guarantee that he be afforded the right of confrontation.

K.S.A. 22-3716 sets out the procedure to be used during probation revocation hearings. The statute provides that the State shall have the burden of establishing the violation of probation. LabCorp's written reports of its test results were discussed at the probation revocation hearing but not admitted as evidence.

In a probation revocation proceeding, the defendant is entitled to only minimal due process rights. Thus, the full panoply of rights

due in a criminal proceeding is not applicable to probation revocations. *State v. Yura*, 250 Kan. 198, 201, 825 P.2d 523 (1992). Among the minimum requirements of due process in a probation revocation hearing is the right to confront and cross-examine adverse witnesses. 250 Kan. at 207. The probationer's right of confrontation, however, may be dispensed with if the trial court finds good cause for not allowing confrontation. 250 Kan. at 207-08.

Graham did not object to the testimony regarding the LabCorp results. Because of the lack of objection, the trial court was not required to make specific findings for admission of the evidence. The erroneous admission of evidence may not be raised on appeal absent a timely objection to the evidence, so stated as to make clear the specific ground of the objection. K.S.A. 60-404; *State v. Sutton*, 256 Kan. 913, 924, 889 P.2d 755 (1995).

We note that the Kansas Legislature enacted the harmless error rule. K.S.A. 60-261 states:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Here, no objection based on lack of confrontation was made to the district court relating to the LabCorp reports. If Graham had objected, the trial court would have been required to make specific findings regarding good cause for not allowing confrontation, and this court would have a basis for reviewing the district court's reasons. Because no objection was made to consideration of the LabCorp test results, we find no error.

Furthermore, unsubstantiated and unreliable hearsay cannot, consistent with due process, be the sole basis for a probation revocation. When hearsay is reliable, however, it can be the sole basis for a probation revocation. When hearsay is offered as the only evidence of the alleged violation, the indicia of reliability must be substantial. *Miller*, 20 Kan. App. 2d at 389. The probation officer, who was certified to conduct urinalysis testing, testified that on two

occasions Graham had field-tested positive for amphetamine and marijuana. The probation officer substantiated the unadmitted LabCorp reports, giving the reports a substantial indicia of reliability.

Graham next contends that the district court's failure to state statutory factors when imposing a sentence greater than the statutory minimum sentence was error.

K.S.A. 21-4601 provides:

"This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

K.S.A. 21-4606(b) provides:

"The following factors, while not controlling, shall be considered by the court in fixing the minimum term of imprisonment:
"(1) The defendant's history of prior criminal activity;
"(2) The extent of the harm caused by the defendant's criminal conduct;
"(3) Whether the defendant intended that the defendant's criminal conduct would cause or threaten serious harm;
"(4) The degree of the defendant's provocation;
"(5) Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
"(6) Whether the victim of the defendant's criminal conduct induced or facilitated its commission;
"(7) Whether the defendant has compensated or will compensate the victim of the defendant's criminal conduct for the damage or injury that the victim sustained."

The seven factors set forth in K.S.A. 21-4606(b) are to be considered by the court in fixing the minimum term of imprisonment which is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime. Where the sentence exceeds the minimum, the legislature intended that the sentencing judge place on the record a detailed statement of the facts and factors the judge considered. Failure to do so does not

always indicate the sentencing court abused its discretion. Each case is to be considered on its facts. *State v. McDonald,* 250 Kan. 73, 82-83, 824 P.2d 941 (1992).

Although a district court need not expressly consider the K.S.A. 21-4601 objectives on the record, where the district court has completely failed to follow the policy set forth in K.S.A. 21-4601 in sentencing a defendant, the court has abused its discretion and the sentence imposed must be set aside and the case remanded for the purpose of resentencing in accordance with the proper statutory procedure. *State v. Johnson,* 255 Kan. 156, 162, 872 P.2d 247 (1994). It is important to note that the sentencing judge here originally sentenced Graham in 1987 and placed Graham on probation in 1998.

At Graham's original sentencing in 1987, two prior convictions were admitted into evidence. One conviction resulted from an uncounseled plea in an Arkansas prosecution for possession of cocaine with the intent to deliver, which was later successfully challenged. The other conviction was a Kansas conviction for possession of cocaine. Because of the two prior convictions, Graham's sentence was statutorily enhanced to life imprisonment. When sentencing Graham in 1987, the trial court stated:

"In imposing the sentence, the Court is required to take into consideration the defendant's past history of criminal activity. There have been a number of misdemeanor offenses, not terribly important to this Court other than showing the defendant's attitude toward his responsibilities, not indicating any great propensity to commit violent offenses or any such nature as that, but merely a general attitude to disregard and disdain[s] from reckless driving to speeding. However, with respect to three-time conviction—or third time conviction of possession of cocaine, this Court must consider that this is no longer a victimless crime. I do not know how much trafficking or distribution or whatever of cocaine or possession with the intent to deliver is his previous conviction. I don't know how much this has been spread out to other people, but it's obviously, it's a continuing act of Mr. Graham which he has no intention to terminate.

"He's been placed on probation twice before, and with that extended leniency, saw fit to continue that activity. There is no provocation, there is no inducement, there is no substantial grounds for excusing or justifying such conduct. It has been apparent to the defendant that his behavior is unlawful, he's been warned and had opportunities on many occasions to bring his activity into conformity but it's obvious that this man has an attitude where he is not going to conform his behavior

to the societal norms and live within the penal—or live within the requirements of the criminal statutes. It is obvious that he intends to break these laws. It is just as obvious that this Court is required to impose the sentences which are provided by law.

"Mr. Graham has written to this Court through the Court Services Office a long and extensive personal plea as to what he thinks of this case. It is very indicative of the fact that Mr. Graham, throughout all of these documents—and they are some extensive writing—continues to blame everyone else in the world for his problems which he created by his own possession of this substance.

"It is not everyone else's fault in this world Mr. Graham, that you have committed these offenses, it is your fault, and you are going to have to do the sentence. And this Court imposes the term of life imprisonment as required by those statutes of the State of Kansas, places you in the custody of the Secretary of Corrections for the term of life imprisonment."

## When revoking Graham's conviction in 1998, the court stated:

"The Court notes that the defendant originally received a harsh sentence. The Court also notes that the defendant has received clemency from the Governor of the State. The Court notes the defendant has also received an opportunity for an early probation from this Court, and that he has served approximately ten years in—in prison.

"The purpose of sentencing is not to merely follow the statute. And the statutes and the laws are made to control behavior in society, and the severity of the punishment increases proportionately with the need to modify that behavior. Harsh sentences are provided by statute to give notice of the importance of the statute and the importance of the crime, and as an incentive to prevent certain behaviors. That normally works with a majority of society.

"And this Court thought, in placing Mr. Graham on probation, that 10 years of behavior modification in prison, and the sword of a large sentence hanging over his head was going to be enough to rehabilitate Mr. Graham; and that with such a harsh sentence as a possibility, Mr. Graham's only obligation was to complete one year without violating the law or the conditions of probation.

"I felt that when I placed Mr. Graham on probation for that one year, that I would be able to tell within one year whether or not he could, whether or not he was rehabilitated, whether or not he could live without violating the law. That's probably the only thing that I did right."

"There's only one place where this syllogism of the proportionate sentence doesn't work, and that's when there is an antisocial or asocial personality, Mr. Graham, because in this particular case the old expression is 'A leopard can't change it's spots.' And you can't change your personality You can change your behavior, but you can't change your personality, any more than I can change mine.

"In this case, a long sentence was unable to change you. Your own child, that needs you, wasn't able to change your—your behavior. The drugs you took weren't able to change you. A—a liberal probation, given to you, wasn't able to change

you. The Court placing trust and responsibility on your shoulders, wasn't able to change you.

"And in my view, you're not at this time physically dependent upon any drugs. And you do not appear to be, after today, and after being in custody, there appears to be no—no change in your behavior, no sign of dependence. And I don't see any drug program or treatment program being of any value to you. A person of—of your abilities would probably not—would probably be able to see through the obvious program of—of most drug treatment programs, and I don't think you'll ever get anything out of it.

"It appears to this Court, that the original sentencing, which took into consideration a number of factors, and which was reduced to a 15 to life, which was the appropriate sentence at that time, shouldn't be—that your sentence at this time should not be greater or lesser [than] that sentence which was your original sentence at this point in time.

"So the Court, for that reason, recommits you to the Secretary of Corrections of the State of Kansas for a term of not less [than] 15, no[r] more [than] life."

Graham asserts that the district court's failure to expressly consider on the record the factors set out in K.S.A. 21-4601 and K.S.A. 21-4606 at the 1998 hearing was an abuse of discretion requiring a new sentencing. We disagree.

Although in 1998 the sentencing court focused primarily on Graham's lack of motivation to rehabilitate, the judge by reference included the factors it considered during the original 1989 sentencing. The judge considered Graham's history of prior criminal activity, factor (1) of K.S.A. 21-4606, which demonstrated to the judge an unwillingness on Graham's part to rehabilitate. The judge observed that Graham was not drug-dependent, factor (5), an excuse or justification. The district judge determined that the other five factors were not relevant.

Although the seven factors set forth in K.S.A. 21-4606(b) are to be considered by the court in fixing the minimum term of imprisonment, failure to do so does not always indicate the sentencing court abused its discretion. Each case is to be considered on its facts. See *McDonald,* 250 Kan. at 82-83.

After sentencing Graham, the sentencing court ordered that Graham submit to a psychological evaluation. At the 120 day callback hearing, the report from the TCF recommended that Graham be reinstated on probation with court services, obtain outpatient counseling, and maintain stable employment. The district court

refused to modify the sentence. Graham argues that the district court erred by refusing to modify his sentence.

K.S.A. 2000 Supp. 21-4603(d) requires a district court to modify a defendant's sentence upon an unequivocal recommendation by TCF, unless the court makes required findings on the record. *State v. Bruce*, 255 Kan. 388, 398, 874 P.2d 1165 (1994). The district court must find and set forth with particularity its reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the inmate will not be served by such modification. *State v. Miller*, 260 Kan. 892, 926 P.2d 652 (1996).

The district judge found that the recommended conditions of probation which Graham would be subject to were the same conditions he violated. The judge observed that while on probation, Graham had committed acts which again subjected Graham to drug charges. In short, the district judge concluded that Graham was not amenable to probation because of Graham's continued use of illegal narcotics, even after spending 10 years in prison. Based on Graham's past and continued use of illegal narcotics, the district judge found that Graham continued to pose a threat to himself and to society.

Affirmed.