NOT DESIGNATED FOR PUBLICATION

No. 117,236

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAKOTA GEORGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed April 13, 2018. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and MCANANY, JJ.

PER CURIAM: Dakota George was ordered to complete the residential community corrections program as part of a previous probation violation sentence. While in this program, George engaged in an altercation with a staff member. The staff member alleged that George violated his probation rules by threatening and disrespecting a staff member. The district court agreed and revoked George's probation. The court imposed the modified underlying prison sentence. George appeals to this court arguing there was insufficient evidence to support the violation and, accordingly, that it was an abuse of discretion to revoke his probation.

1

George pled guilty to a Kansas Offender Registration violation. George was sentenced to 24 months' probation with community corrections field services and a 19-month underlying prison sentence. The journal entry required that George "[o]bey all rules, regulations, and requirements of Community Corrections" under the probation conditions. George violated his probation twice, after which the court ordered him to serve a 120-day sanction in jail and, upon release, to then complete the residential community corrections program. The district court warned George that another probation violation would likely revoke his probation. "Bottom line, you can disagree, your mother can clearly disagree with how your probation officer or any of us make orders for you, but in the end, you have to follow these orders" and George agreed. The judge also told George that he would have to jump through hoops if he wanted to stay on probation.

While in the residential program, George engaged in an altercation with Michael Norris, the residential community shift supervisor, after George attempted to bring three separate dinners into the facility. Norris told George that, according to facility rules, George could only bring in enough food for one individual. George replied that he brought back this same amount of food on previous occasions and never had a problem. After a few minutes of protesting, George told Norris that he was going to fill out a grievance report. Norris replied, "'Make sure you get my name right.'" As George walked back to his dorm, Norris thought he heard George mumble something under his breath.

The encounter did not end there. Norris followed George to his dorm to clarify what George said. George then allegedly said to Norris: "[T]ake your badge off and come in here," which Norris perceived to be a threat. George denied saying anything as he walked away, making the badge statement, or that he threatened Norris at any point. When Norris asked George what the problem was, George stated Norris was the problem. Norris informed George that he was breaking facility rules by being loud after quiet time.

2

George said Norris was the one keeping the others awake because Norris was being loud. Other residents allegedly told Norris to leave George alone, then George quieted down and Norris walked away.

Norris filed a disciplinary report and George was arrested the next day. The bench warrant stated the defendant shall abide by the rules and regulations of said program including: (1) "[T]he defendant understands that assaultive behavior, violence or threats of violence are totally unacceptable and agrees not to engage in this type of behavior. The defendant also understands that assaultive behavior can include verbal and physical assaults" and (2) "the defendant will be respectful to the Center staff and others." It stated George violated this condition because he "verbally threatened a Community Corrections Residential staff member" and was "disrespectful to a Community Corrections Residential staff member."

At the evidentiary hearing, the court acknowledged the situation could have been handled differently but ultimately decided "Norris was still a credible witness as to the specific statement about the badge, which is really what this comes down to." The district court found that George violated probation for both allegations by a preponderance of evidence. The judge stated "when you are in residential you are at a facility with rules where you're told what to do, and in the end you've got to abide by those rules and that did not occur." The judge deemed the revocation appropriate because this was George's fourth probation violation and the court believed it was out of options. The court modified the original 19-month sentence to 17 months' incarceration. George timely appealed.

3

ANALYSIS

*There was substantial competent evidence to support the district court's finding that George violated his probation.*

Before revoking probation, a court must first establish that a probationer has violated the probation terms and conditions by a preponderance of evidence. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). "A preponderance of the evidence is established when the evidence demonstrates a fact is more probably true than not true." *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). Under K.S.A. 22-3716, the State has the burden of establishing that a probation violation occurred. *State v. Graham*, 272 Kan. 2, 5, 30 P.3d 310 (2001).

When reviewing a preponderance of evidence challenge, this court looks for substantial competent evidence to support that finding. "'[S]ubstantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' [Citation omitted.]" *Inkelaar*, 38 Kan. App. 2d at 315 (quoting *State v. Luna*, 271 Kan. 573, 575, 24 P.3d 125 [2001]). When reviewing sufficiency of evidence, the appellate court will not reweigh the evidence or reassess witness credibility. *State v. Fulton*, 292 Kan. 642, 646, 256 P.3d 838 (2011).

George contends there was insufficient evidence to support the finding that George threatened or disrespected a staff member for two reasons. First, George contends that the State did not establish the specific probation conditions alleged to have been violated at any point in the evidentiary hearing, nor were they laid out in any of the journal entries of judgment against him. George contends that the State established there was a food rule, but never established there was a rule that "prohibited residents from making comments to staff that they could perceive as a threat [or disrespectful]" or a rule that they were not allowed to "show their frustration when a rule that had never been

4

applied to them was suddenly and arbitrarily applied." George argues the State did not call his supervising officer to the stand to establish the conditions of his probation, they only called Norris. Although the State established that George had to successfully complete the residential program, the State did not allege George violated this condition.

Secondly, George argues that the State failed to prove that George's actions were a violation of those conditions. Although the court found Norris' testimony credible, George does not believe "'take your badge off and come in here'" rises to the level of a threat.

The State contends the record accurately reflects evidence that George acted inappropriately. The State argues that the court informed George that he was expected to adhere to all standard conditions of the court and community corrections and that these conditions were included in the journal entries. The State further argues that the judge also informed George that he was expected to adhere to rules even if he did not agree with them. The State contends that "[t]o suggest that the requirement to respect the authority figures within the program he was ordered to successfully complete was not a condition of his probation because it was not specifically stated unnecessarily splits hairs." The State adds that it defies logic to assume that respect for individuals administering the program was not embodied in that directive.

There is substantial competent evidence to support the conclusion that George threatened and disrespected Norris, thus violating his probation. It is clear that the probation conditions were laid out, both at the original sentencing as well as all journal entries that followed. The bench warrant for the current violation specifically identified the rules George violated. Because George had to obey all rules, regulations, and requirements of community corrections, he was required to obey the threat and disrespectful rules. Although it was the State's burden to prove the violation, George had the opportunity at the evidentiary hearing to raise the issue that these specific rules were

5

not a part of his probation conditions, but he failed to do so. Rather, the evidentiary hearing focused on whether George violated the rules, not whether these rules were part of his probation.

Although the probation conditions did not specifically state that George could not make comments to staff that they could perceive as a threat or show frustration when a rule was suddenly and arbitrarily applied, a reasonable person could find that the rules against threatening and disrespecting staff members would fall under the standard condition of "[o]bey all rules, regulations, and requirements of the Community Corrections." The judge previously made it clear that George had to follow rules even if he disagreed with them and he would have to jump through hoops if he wanted to stay on probation. George agreed to this. The State only had to prove by a preponderance of evidence that these were probation conditions. Therefore, George's argument that the State did not establish the probation conditions fails.

Further, when George contends that the badge statement does not rise to the level of a threat, George is essentially asking this court to reweigh the evidence. Both sides had the opportunity to present their case, but the judge ultimately found that Norris was the more credible witness regarding the badge statement, which is what the situation came down to. Under the preponderance of evidence standard, the judge determined that the evidence that George made the badge statement was more likely to be true than not true. A reasonable person might accept Norris' testimony as being sufficient to support this conclusion. The appellate court will not reweigh evidence or reassess the credibility of a witness. Thus, the district court did not err in ruling that George violated probation in threatening and disrespecting a staff member.

*The district court did not err in revoking George's probation.*

"Once there has been evidence of a violation of the conditions on which probation was granted, revocation is in the sound discretion of the district court." *Graham*, 272 Kan. at 4. "Judicial discretion can be abused in three ways: (1) if no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact." *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

George contends that revocation presupposes a violation of the conditions of probation that is not outweighed by mitigating factors. George argues the district court erred in revoking the probation because, under the totality of circumstances, it did not adhere to mitigating factors that would outweigh the violation. Even though George was frustrated that the rule was suddenly being enforced, rather than take that frustration out on Norris, he instead filed a grievance report and walked back to his dorm. George contends that Norris escalated the situation both by stating "'make sure you spell my name right'" and by following George to his dorm to confront him.

The State contends that in looking at the totality of the circumstances, the court should also include George's past probation violations, not just events in this incident. The revocation was warranted based on George's previous problems submitting to authority as evidenced by previous probation violations. The State argues that George cannot pick and choose which rules he wants to follow. The State believes "defiant conduct consistently plagued the [defendant]" and the court's decision to revoke was not arbitrary or unreasonable.

Even if this court considers mitigating factors, there is no abuse of discretion in revoking George's probation. Under K.S.A. 2017 Supp. 22-3716(c)(1)(E), if a court has previously imposed a 120-day sanction, a court may revoke probation and impose the

underlying sentence. At George's 120-day sanction hearing, the district judge warned George that another probation violation would likely result in revocation. At the evidentiary hearing, the court reasoned that revocation was appropriate because this was George's fourth violation and the court was out of options. Therefore, this decision is not unreasonable. There is no error of law because the district court was within its right to revoke the probation under K.S.A. 2017 Supp. 22-3716(c)(1)(E). There is also no error of fact because the district court found by a preponderance of evidence that Norris was a credible witness and this court will not reweigh evidence or reassess witness credibility. The district court did not err in revoking George's probation. Accordingly, we affirm the revocation of his probation.

Finally, we pause to note that it appears George has served his entire sentence in this case. When he was sentenced on December 19, 2016, to a 17-month sentence, he received credit for 300 days already served, or approximately 10 months. Assuming no good time credit granted, he would have been released at the latest in July 2017 and at the earliest, according to the docketing statement filed with this court, May 6, 2017. This was well before any briefs were filed in this case. Because this was not a sentencing appeal, the State's duty to notify this court of any change in the appellant's custodial status under Supreme Court Rule 2.042 (2018 Kan. S. Ct. R. 18), is not applicable. However, it would appear to be good practice to do so, particularly if the appellant is released from custody—having served his entire term of incarceration—before the appellant's brief is even filed.

Affirmed.