NOT DESIGNATED FOR PUBLICATION

No. 116,761

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

V.

COREY LEROY YAZELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion on remand filed February 5, 2021. Appeal dismissed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., MALONE and GARDNER, JJ.

PER CURIAM: This probation revocation appeal comes to us on remand from the Kansas Supreme Court. We had dismissed Yazell's appeal after finding it moot, but the Kansas Supreme Court reversed and remanded. It found that the Kansas Adult Supervised Population Electronic Repository (KASPER) is unreliable evidence, so appellate courts may not rely on it to make factual findings in support of mootness, and a case does not become moot simply because a criminal defendant completed his or her sentence. *State v. Yazell*, 311 Kan. 625, 465 P.3d 1147 (2020). The Supreme Court directed us on remand to describe the source showing the defendant's change of custody

1

and its reliability, and if we again find that Yazell has completed his sentence, to reconsider whether his case is moot. We do so and again find Yazell's appeal moot.

*Factual and Procedural Background*

In January 2016, Yazell pleaded guilty to one count of possession of methamphetamine and one count of driving with a suspended license. In March, the district court sentenced Yazell to 14 months of prison for the methamphetamine conviction and a concurrent 90 days for the driving conviction. The court then suspended the imposition of that sentence and placed Yazell on 12 months of probation.

Yazell's order of probation included these conditions: (1) he would report to his probation officer when directed; (2) he would not associate with persons who have criminal histories; (3) he would satisfy any outstanding warrant; and (4) he would not violate any law, including laws criminalizing the possession of controlled substances. Yazell also agreed in that order to the following condition: "Any defendant allowed to report outside of Johnson County, Kansas, waives any hearsay objection to evidence in any proceeding to revoke probation." Yazell's probation was transferred to Missouri through the interstate compact, triggering his hearsay waiver.

In September 2016, the State moved to revoke Yazell's probation. Its motion alleged several violations of his probation conditions: he was arrested in Missouri on July 7, 2016, on drug charges; he failed to report to his probation officer several times; he was associating with individuals with criminal histories; and he failed to satisfy outstanding warrants in Missouri.

In October, the district court held a hearing on the State's motion. Jeri Reece, the Kansas interstate compact officer who managed Yazell's case while he lived in Missouri, testified to information she had received in interstate compact reports. She identified the

State's exhibit as the Missouri police report she had reviewed. Although Reece could not remember how she had obtained the police report, she explained that typical protocol was either for the Johnson County probation office to request the report from the Missouri police department or for the Missouri probation officer who was supervising the probationer to forward the report to the Johnson County probation office. Reece had kept the police report as part of her office file on Yazell.

When the State moved to admit the police report into evidence, Yazell objected, arguing that Reece's testimony based on the report would be hearsay. Yazell argued that even though he had agreed to waive any hearsay objections in his probation order, he had not waived his Confrontation Clause or due process rights. The district court overruled Yazell's arguments and admitted the police report, finding:  (1) Yazell had chosen to sign the probation order waiving any objections to hearsay at his probation violation proceedings; (2) Yazell had fewer constitutional rights to confront witnesses in a probation violation proceeding than at trial; and (3) Yazell could have subpoenaed the officer who wrote the police report and thus cross-examined him.

The State then sought to clarify the record, advising the district court that under *State v. Palmer*, 37 Kan. App. 2d 819, 825, 158 P.3d 363 (2007), defendants at probation violation hearings "have a right to confront witnesses." The State asked the district court to find that confrontation was undesirable or impractical and that the evidence was reliable. The district court tacitly agreed:

> "Oh, [I] appreciate that and I think that is exact point. I didn't think that statement specifically, the right to confrontation is not waived but it is not as expansive to that degree as you would have at the time of a trial.
>
> "And that this proffer and not admitted police report is that, it is a police report that was provided to interstate compact supervisor whether it came directly from a

3

request from the police department in Blue Springs or if it came from the Missouri probation officer, it was provided to Ms. Reece, part— as part of her file.

"And that that was the basis for her recommending and requesting this motion to revoke. So for all those reasons [the police report] is admitted."

The police report stated that on July 7, 2016, police had stopped a car Yazell was a passenger in for a traffic violation. The police report also stated:

(1) two other passengers in the car had criminal histories;
(2) police found a digital scale at Yazell's feet that field tested positive for methamphetamine residue; and
(3) once Yazell got out of the car he consented to a search of his person, and police found two marijuana cigarettes in his pocket.

Reece also testified to Yazell's other probation violations. He had failed to report to his Missouri probation officer four times. And he had failed to satisfy outstanding Missouri bench warrants in effect when he was sentenced—one for failure to appear on a charge of possession of a controlled substance (marijuana) that had a $10,000 bond and others for failure to appear on charges of driving while suspended, having $600 and $2,000 bonds.

The district court revoked Yazell's probation. It found that Yazell had violated the terms of his probation by committing new law violations as stated in the police report, by failing to report to his probation officer, and by failing to resolve his outstanding warrants. It then imposed Yazell's original sentence of 14 months' imprisonment followed by 12 months' postrelease supervision.

Yazell timely appealed. We dismissed Yazell's appeal after finding it moot, but the Kansas Supreme Court found that "the Court of Appeals erred to the extent that it relied

on KASPER and the State's hearsay assertions about a Corrections employee confirming the accuracy of the report." *Yazell*, 311 Kan. at 631. The Supreme Court directed us on remand to describe the source showing the defendant's change of custody and its reliability, and if we again find that Yazell has completed his sentence, to reconsider whether his case is moot.

*Is Yazell's appeal moot?*

Mootness asks whether clear and convincing evidence shows the actual controversy has ended and a judgment would be ineffectual and not impact any of the parties' rights. *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014). "Generally, Kansas appellate courts do not decide moot questions or render advisory opinions." *State v. Tracy*, 311 Kan. 605, 607, 466 P.3d 434 (2020). Mootness is a discretionary policy used to avoid unnecessary issues but allows a court to consider an issue "when judicial economy would benefit from a decision on the merits." *State v. Roat*, 311 Kan. 581, 587, 466 P.3d 43 (2020). Mootness is a legal question we review de novo. 311 Kan. at 590.

On the same day the Kansas Supreme Court decided *Yazell*, it decided *Roat*. *Roat* explained the burden-shifting analysis for mootness:

> "A case is moot when a court determines that '"it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."' . . .
>
> . . . .
>
> "The party asserting mootness generally bears the initial burden of establishing that a case is moot in the first instance. In an appeal solely challenging a sentence, the party asserting mootness may establish a prima facie showing of mootness by demonstrating that the defendant has fully completed the terms and conditions of his or

5

her sentence. The burden then shifts to the party opposing the mootness challenge to show the existence of a substantial interest that would be impaired by dismissal or that an exception to the mootness doctrine applies. [Citations omitted.]" 311 Kan. at 584, 593.

Thus to find this case moot, we must find reliable evidence that the defendant has fully completed the terms of his or her sentence, that our ruling would not affect any of defendant's rights, and that an exception to the mootness doctrine does not apply. Yazell contends that none of these requirements is met, while the State contends that each is met.

*Reliable evidence shows Yazell has completed his sentence.*

The State may meet its burden of establishing a prima facie showing of mootness by showing the defendant has "fully completed the terms and conditions of his or her sentence." *Roat*, 311 Kan. at 593. So we first consider whether the State has presented reliable evidence that Yazell has completed his sentence. *Yazell*, 311 Kan. at 628 ("Before the appellate court may consider mootness, it must confirm the change in circumstance.").

Appellate courts rarely make factual findings, but to decide a defendant's change of custody for purposes of mootness we must do so. *Yazell*, 311 Kan. at 628. Because the appellate forum is generally not conducive to testing evidence, we "must carefully scrutinize the reliability of evidence before making the rare finding of fact." 311 Kan. at 628. When considering appellate fact-finding on documents or websites, our Supreme Court has stated three concerns: (1) whether the information makes claims of authenticity or reliability, (2) whether the information is certified, and (3) whether those who generate the information are available for cross-examination at the appellate level. 311 Kan. at 631. Because KASPER did not mitigate these concerns, our Supreme Court held that "courts may not rely on it to make factual findings." 311 Kan. 625, Syl. ¶ 1.

After remand, the State filed a notice of change of custodial status, attaching a "Certification of Time Served." See Supreme Court Rule 2.042 (2020 Kan. S. Ct. R. 18). This certification shows that Yazell completed his sentence in this case over two years ago, on November 10, 2017. The document, which includes Kansas Department of Corrections (KDOC) letterhead, a signature from Vickie Belanger, senior administrative assistant, and a certification statement, reads:

"I, the undersigned Vickie Belanger, of lawful age being duly sworn, do hereby, declare and certify that I am designated as a Public Service Administrator for the Kansas Department of Corrections and by virtue of my said office I am the legal keeper of all official records and files of the Office of the Secretary of Corrections. The foregoing is true and correct information from the records of: **YAZELL, Corey KDOC # 114606**."

Is this certification reliable enough for us to find that Yazell has completed his sentence, for purposes of our mootness analysis? A panel of this court recently answered that question affirmatively:

" A written certification from the KDOC records custodian is reliable evidence that may support appellate fact-finding for the limited purpose of deciding whether an appeal is moot." *State v. Castle*, 59 Kan. App. 2d 39, Syl. ¶ 4, 477 P.3d 266 (2020).

*Castle* reasoned:

"The certification contains a signature of the KDOC records custodian 'being duly sworn' and states that it provides 'true and correct information' from Castle's records with the KDOC. Castle has offered no evidence to controvert the evidence presented by the State. He contends the State has failed to meet its burden to show he is released from custody. Significantly, Castle has not affirmatively represented to this court that the information in the KDOC certification is inaccurate.

7

"Granted, Castle is unable to 'cross-examine' the KDOC records custodian who signed the certification. Likewise, the signature on the certification is not notarized or subscribed before the person who administered the oath. Following this procedure would have strengthened the evidentiary value of the certification. But without any evidence offered by Castle challenging the accuracy of the information in the KDOC certification, we accept the written certification as reliable evidence sufficient to show that Castle is no longer in prison for the limited purpose of deciding whether this appeal is moot." 59 Kan. App. 2d at 46-47.

Yazell's response to the State's notice of change of custody argues that *Castle* was wrong, that more is required, and that we should remand so the district court can make the necessary factual findings. He argues that this court must determine whether Yazell is in custody by using only information in the record on appeal, information proper for judicial notice, or facts determined by the district court on remand. We are unpersuaded. We are not reviewing a factual finding in the record made by another court nor are we taking judicial notice of a fact for purposes of appellate review. And it would be undesirable and impractical to remand for a hearing by the district court because these certifications are standard documents, cross-examination likely would lack substance, Yazell does not contest the controlling fact in the certification, and a remand would delay the case, contravening judicial economy. Yazell suggests nothing the district court could accomplish that we cannot. Instead, as *Yazell* states, this mootness question requires this appellate court to make a "rare finding of fact" based on our own careful scrutinization of the reliability of evidence. 311 Kan. at 628.

Our facts are like those in *Castle*, and we adopt *Castle*'s reasoning. The certification here is signed by the KDOC records custodian and is "duly sworn." Unlike KASPER, which makes no claim to authenticity or reliability, the certification states that it provides "true and correct information" from KDOC's records. The written certification is reliable evidence sufficient to show that Yazell is no longer in prison for the limited purpose of deciding whether this appeal is moot. Yazell does not argue that he has not

completed his sentence, nor does he proffer any reliable evidence contradicting the KDOC's certification.

The State has thus established a prima facie case of mootness by showing reliable evidence that Yazell has fully completed the terms of his sentence.

The burden now shifts to Yazell to show his substantial interest that would be impaired by dismissal or that an exception to the mootness doctrine applies. Yazell tries to do both.

*Yazell fails to show that dismissal would impair his substantial interest.*

Because the State has made a prima facie case of mootness, Yazell bears the "burden of demonstrating the existence of a meaningful interest that would be impaired by dismissal." *Roat*, 311 Kan. at 593.

Yazell does not argue that our ruling on appeal would have any effect on his case, since he challenges the revocation of his probation—yet he has satisfied the sanction imposed for his probation violation, which was serving the entire prison term of his original sentence. His debt to society has been paid in full. Even if hearsay evidence was used to show his probation violations, "[m]ere stigma or 'rightness' is insufficient to justify continuing to exercise jurisdiction over an appeal." *Roat*, 311 Kan. at 599. The State of Kansas has no authority to punish or supervise Yazell any further in this case, so "[a]ny action this court might take regarding his probation revocation would be an idle act insofar as [his] rights in this action are concerned." *State v. Montgomery*, 295 Kan. 837, 841, 286 P.3d 866 (2012).

Instead, Yazell first argues that his case is not moot because a court in his future criminal cases could consider his lack of amenability to probation an aggravating factor

9

when determining a departure sentence. See *State v. Snow*, 282 Kan. 323, Syl. ¶ 15, 144 P.3d 729 (2006), *disapproved of by State v. Guder*, 293 Kan. 763, 267 P.3d 751 (2012), and *abrogated by State v. Jenkins*, 311 Kan. 39, 455 P.3d 779 (2020). Yazell relies on *Snow*'s finding that under K.S.A. 2005 Supp. 21-4716, nonamenability to probation is a sufficient aggravating factor to support a departure sentence.

The State counters that the defendant can contest the probation violation finding at a future departure hearing because the controlling issue then will be a factual one—Yazell's overall amenability to probation, rather than the mere legal conclusion that Yazell violated probation. In other words, the State contends that the consequences from Yazell's probation revocation depend on a judge's discretion in a future criminal proceeding rather than on the mere fact of Yazell's probation revocation.

We are generally unpersuaded by Yazell's argument, which asks us to assume that he will violate the law again. This future consequence of a departure hearing depends on his violating the law, getting caught, being convicted, and moving for a departure sentence. That consequence is speculative and "speculation is not a legitimate basis to avoid dismissal for mootness." *State v. Steele*, No. 115,270, 2020 WL 3393818, at *2 (Kan. 2020) (unpublished opinion). "Respondents themselves are able—and indeed required by law—to prevent such a possibility from occurring." *Lane v. Williams*, 455 U.S. 624, 632 n.13, 102 S. Ct. 1322, 71 L. Ed. 2d 508 (1982).

And as to a possible finding in a future departure hearing that Yazell lacks amenability to probation, our Supreme Court has repeatedly rejected this future collateral consequences argument. It holds that the nonstatutory consequences arising from a probation revocation, which depend on a judge's exercise of discretion in a future criminal proceeding rather than upon the mere fact of a probation revocation, cannot perpetuate a controversy for purposes of the mootness doctrine:

10

"But Hilton claims that she might suffer even further consequences in a future, separate criminal proceeding because of what the probation revocation will imply about her amenability to probation. We rejected that argument in *Montgomery*, stating:

'A case is not moot where it may have adverse legal consequences in the future. But the nonstatutory consequences arising from a probation revocation, which consequences will depend upon a judge's exercise of discretion in a future criminal proceeding rather than upon the mere fact of the prior probation revocation, are insufficient to perpetuate a controversy for purposes of the mootness doctrine, if the case has otherwise ceased.' *Montgomery*, 295 Kan. 837, Syl. ¶ 4.

"That rationale fits Hilton's circumstance, as well." *State v. Hilton*, 295 Kan. 845, 850, 286 P.3d 871 (2012).

This rationale from *Hilton* and *Montgomery* fits Yazell's circumstance too. His case is thus not saved from mootness even if a court may consider his lack of amenability to probation an aggravating factor in the event he is again convicted of a crime and the court, in its discretion, considers a departure motion.

Yazell also mentions, in response to the State's notice of change of custody, that his case is not moot because his "conviction might be used against [him] in the future in criminal history or as prior bad act evidence." Yazell states only that just as an appeal from a criminal conviction after the defendant has served his full sentence, his appeal from a contested finding of a probation violation is not moot. Yet he cites no authority for that proposition. To the contrary, the United States Supreme Court has refused to extend to revocations of parole the presumption of collateral consequences that may apply to criminal convictions. See *Spencer v. Kemna*, 523 U.S. 1, 12, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998); *Lane*, 455 U.S. at 632-33.

11

And Yazell's assertion about future use of his probation violation as bad acts evidence fails for the same reason as does Yazell's argument about a departure hearing. It is speculative because it rests on the assumption that Yazell will commit another crime, and because the admission of prior bad act evidence rests in the discretion of the trial judge, not on the mere fact of a probation violation or other bad act. See *State v. Lemmie*, 311 Kan. 439, 453, 462 P.3d 161 (2020); see also *Spencer*, 523 U.S. at 15-16 (rejecting as purely speculative and discretionary defendant's claims that his parole violation for forcible rape and armed criminal action could be used to impeach him in a future criminal or civil proceeding or could be used against him directly under Federal Rule of Evidence 405—permitting proof of specific instances of a person's conduct when a trait of character of that person is an essential element of a charge, claim, or defense—or Federal Rule of Evidence 413—permitting evidence of the defendant's commission of other sexual assaults when the defendant is accused of an offense of sexual assault).

Nor are we persuaded by Yazell's assertion that his "conviction might be used against [him] in the future in criminal history." Yazell seems to assert that his probation revocation is a conviction that would negatively affect his criminal history score. This too, is speculative, assuming that Yazell will violate, instead of comply with, criminal laws.

But even assuming Yazell's unstated premise that he has a predilection for recidivism, dismissing this appeal can have no legal effect on how a future sentencing court would classify Yazell's prior crimes in a new sentencing proceeding. Yazell fails to tell us what "conviction" he is referring to. His appeal does not challenge his 2016 convictions for possession of methamphetamine and driving with a suspended license, which were the basis for his sentence that the court suspended and then imposed when it revoked Yazell's probation. Those are the prior crimes from this case which would be included in his future criminal history score. See *State v. Tracy*, 311 Kan. 605, 608, 466 P.3d 434 (2020). Yazell's appeal challenges only the admission at his revocation hearing

of a police report that was used to establish some of his probation violations. But Yazell's probation revocation was not premised on any conviction of a new crime—no evidence was proffered that he was convicted for any crimes stated in the police report. Instead, probation can be revoked, as here, on a showing by a preponderance of the evidence that a probationer committed a new crime. K.S.A. 2019 Supp. 22-3716(c)(7)(c)(C). *State v. Gumfory*, 281 Kan. 1168, Syl. ¶ 1, 135 P.3d 1191 (2006).

Yazell thus shows no meaningful interest of his that dismissal would impair. See *Roat*, 311 Kan. at 593. Similarly, in *Spencer*, when the defendant claimed that an order revoking parole could be used to increase his sentence in a future sentencing proceeding, that injury was not concrete enough to preclude a finding that his appeal was mooted by his release from his sentence.

> "We of course have rejected analogous claims to Article III standing in other contexts.
>
>> '[W]e are . . . unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction.' *O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S. Ct. 669, 677, 38 L.Ed.2d 674 (1974).
>
> "See also *Los Angeles v. Lyons*, 461 U.S. 95, 102-103, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983)." *Spencer*, 523 U.S. at 15.

Cf. *Roat*, 311 Kan. at 600-01 (finding a "future hypothetical requirement—objecting to a criminal history score—does not create a justiciable controversy").

Because Yazell fails to meet his burden of showing a meaningful collateral interest that would be impaired by dismissal, his appeal is moot, unless an exception applies.

*The argued exception to the mootness doctrine does not apply.*

Yazell contends the following exception applies to the mootness doctrine:

"Because the doctrine is not jurisdictional, it is subject to exceptions. One commonly applied exception to the rule that appellate courts will not review moot issues is where the moot issue 'is capable of repetition and raises concerns of public importance.' *State v. DuMars*, 37 Kan. App. 2d. 600, 605, 154 P.3d 1120, *rev. denied* 284 Kan. 948 (2007). In that context, public importance means

> ""'something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals.'" *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 290, 807 P.2d 664 (1991) (quoting Annot., 132 A.L.R. 1185, 1188-89).' *Skillett v. Sierra*, 30 Kan. App. 2d 1041, 1048, 53 P.3d 1234, *rev. denied* 275 Kan. 965 (2002)." *Hilton*, 295 Kan. at 850-51.

*Hilton* applied that exception, finding a likelihood of repetition because with only 18 months' probation "it would have been highly unlikely that anyone in that circumstance could have obtained relief on appeal for any error in the revocation proceedings before the issue became moot." 295 Kan. at 851. And Hilton's claim that the district court erroneously aggregated two consecutive 12-month probations into a total probation term of 24 months for revocation purposes was of public importance—"district courts are likely to face the circumstance of two cases with consecutive prison terms, and it is certainly a matter of public importance that such courts know the permissible manner in which to structure probation in those circumstances." 295 Kan. at 851.

Yazell's issue is capable of repetition. As he argues, in other probation revocation hearings, a district court may erroneously rely on hearsay. Yet the district court did not

14

err here because Yazell waived any hearsay objection. See *State v. Conner*, No. 89,918, 2004 WL 1542320, at *2 (Kan. App. 2004) (unpublished opinion) (finding that the condition of courtesy probation that defendant waive hearsay objections at later hearings did not violate due process). Still, because of the short duration of Yazell's sentence, the issue was not resolved on appeal before he completed his sentence.

But Yazell fails to argue that the issue on appeal is of public importance. He asserts only that "other defendants may be subjected to illegal extensions." Yazell apparently equates the admission of hearsay at a probation revocation hearing to an "illegal extension" or to cause an "illegal extension," but he fails to explain what this means. The district court did not extend Yazell's probation—it revoked it.

And to say that other defendants may receive illegal extensions argues only that the issue is capable of repetition. Yazell fails to argue or cite any authority for any tacit assertion that subjecting other defendants to "illegal extensions" is of public importance. By failing to develop any argument about public importance, Yazell abandons this argument. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

Even so, the issue whether Yazell violated the terms of his probation is not of public importance. And even if we recognize that the broader issue—whether revoking probation based on hearsay violates due process—is of public importance, we are unpersuaded that we need to decide that issue since the law on that topic is already well established in Kansas. See, e.g., *State v. Marquis*, 292 Kan. 925, 928, 931, 257 P.3d 775 (2011) (A probationer at a probation violation hearing is not afforded the full panoply of rights due in a criminal prosecution and has no Sixth Amendment right to confront a witness); *State v. Graham*, 272 Kan. 2, 6, 30 P.3d 310 (2001) ("[U]nsubstantiated and unreliable hearsay cannot, consistent with due process, be the sole basis for a probation revocation. When hearsay is reliable, however, it can be the sole basis for a probation revocation. When hearsay is offered as the only evidence of the alleged violation, the

indicia of reliability must be substantial."); *State v. Yura*, 250 Kan. 198, 208, 825 P.2d 523 (1992) (adopting a two-part test for finding whether hearsay evidence at a probation revocation hearing meets minimum due process, requiring an explanation as to why confrontation was undesirable or impractical and the reliability of the evidence).

So although district courts may again have to decide whether due process permits them to rely on certain hearsay evidence in probation revocation hearings, the district courts already have clear guidance from our Supreme Court on how to resolve that issue. Because the law on this issue has already been authoritatively declared, it is not a matter of public importance for us to revisit it. See *Hilton*, at 851 (finding issue "a matter of public importance that such courts know the permissible manner in which to structure probation in those circumstances").

We thus dismiss Yazell's appeal as moot.