NOT DESIGNATED FOR PUBLICATION

No. 122,456

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYRONE ANTHONY KEITH II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed June 11, 2021. Affirmed in part, vacated in part, and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and BUSER, JJ.

PER CURIAM: Tyrone Anthony Keith II appeals the trial court's revocation of his probation and his sentence. He argues that the trial court violated his constitutional rights when it revoked his probation. We disagree. Keith also argues that the trial court erred in scoring his criminal history. Because the presentence investigation (PSI) report does not contain enough information to support Keith's criminal history score and because the State concedes that the current information is insufficient, we vacate Keith's sentence and remand for resentencing. As a result, we affirm in part, vacate in part, and remand with directions.

1

In May 2019, Keith pleaded guilty to three counts of identity theft. At sentencing, the trial court found Keith's criminal history score to be a D and gave Keith 18 months on probation with an underlying 34-month prison sentence. Keith's criminal history score was the result of three Missouri municipal code violations, which were classified as person misdemeanors and aggregated into a person felony, plus a municipal nonperson misdemeanor from Denver, Colorado.

In December 2019, the State moved to revoke probation, alleging that Keith had violated the terms of his probation by committing a new crime and by possessing a firearm. At a hearing on the motion, the State presented one witness, Detective Erin Hernandez. Hernandez, a Kansas City, Missouri property crimes detective, testified that she had interviewed Keith in the hospital following a car wreck. Hernandez explained that two vehicles had been taken from a car auction lot in Kansas City, Missouri. Keith was driving one of the cars and wrecked it while fleeing from transport drivers who worked for the car auction lot. When police arrived at the accident scene, they found a handgun tucked into Keith's pants. Keith objected to Hernandez' testimony based on hearsay, explaining that Hernandez was only reporting what other officers wrote in police reports. The trial court noted Keith's standing objection but overruled it.

When Hernandez interviewed Keith, he denied stealing the vehicle, insisting that he was test driving it. Keith tried to explain to Hernandez why he did not in fact possess a firearm. When Keith drove the car off the auction lot, the employees drove after him before the police arrived. After Keith crashed the car, they ran up to the accident site. Keith told Hernandez that, while these employees were keeping him there until police arrived, one of them placed the gun near him or threw it on the ground near him so that the officers would assume the gun belonged to Keith. Hernandez asked if Keith ever touched the gun because it had been swabbed for DNA evidence. Keith then said that it was his gun, but he only carried it for self-defense.

After the State presented its evidence, the trial court found that Keith violated his probation by stealing a car and possessing a handgun. The trial court then made public safety and offender welfare findings and revoked Keith's probation.

Keith timely appeals.

*Did the Trial Court Err in Revoking Keith's Probation?*

Keith argues that the trial court violated his constitutional rights in three ways by revoking his probation. First, he argues that he was denied due process because he had insufficient notice to defend himself on the allegations that he had committed a new crime. Second, he argues that he was denied due process because the State presented only hearsay as evidence of the new crime. Third, Keith argues that revoking his probation for possessing a firearm violates his right to bear arms under § 4 of the Kansas Constitution Bill of Rights.

An appellate court reviews the trial court's revocation of an offender's probation for an abuse of discretion. *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020).

The State must establish that the probationer violated the terms of probation by a preponderance of the evidence—or that the violation is more probably true than not true. Once established, the court may revoke probation in its discretion. *State v. Gumfory*, 281 Kan. 1168, Syl. ¶ 1, 135 P.3d 1191 (2006); see *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). But see K.S.A. 2020 Supp. 22-3716 (requiring graduated sanctions before revocation in certain circumstances). And appellate courts review the trial court's factual findings for substantial competent evidence. See *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007), *rev. denied* 286 Kan. 1183 (2008).

A trial court's decision to revoke a defendant's probation and order the defendant to serve the underlying sentence must be exercised within the statutory framework of K.S.A. 2020 Supp. 22-3716. A trial court abuses its discretion when it steps outside the framework or fails to properly consider statutory standards. See *State v. Grossman*, 45 Kan. App. 2d 420, 427, 248 P.3d 776 (2011).

When the question on appeal is whether the trial court complied with due process requirements when revoking probation, appellate courts have unlimited review. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). A probationer at a probation violation hearing is not afforded the full panoply of rights due in a criminal prosecution and has no Sixth Amendment right to confront a witness. *State v. Marquis*, 292 Kan. 925, 928, 931, 257 P.3d 775 (2011). While a probationer is entitled to a minimum of due process rights during a probation revocation proceeding, including the right to confront and cross-examine adverse witnesses, this right of confrontation may be dispensed with if the trial court finds good cause to do so. *State v. Graham*, 272 Kan. 2, 5-6, 30 P.3d 310 (2001).

Probation is an act of judicial leniency afforded a defendant as a privilege rather than a right. See *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). But once it is bestowed on a defendant, he or she has a liberty interest in remaining on probation and may only have it revoked if he or she fails to comply with conditions of probation. *Hurley*, 303 Kan. at 581. A trial court's decision to revoke probation usually involves two steps: (1) a factual determination that the probationer has violated a condition of probation; and (2) a discretionary determination as to the appropriate disposition in light of the proved violations. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008).

*Keith received adequate notice of the allegations against him.*

First, Keith argues that the trial court erred in revoking his probation because the grounds alleged by the State were vague. Keith argues that the State never specifically

alleged which law Keith violated and, therefore, denied Keith his due process rights. Keith acknowledges that he did not raise this constitutional due process argument before the trial court.

Generally, an issue is not preserved for appeal unless it is first presented to the trial court. *State v. Cheffen*, 297 Kan. 689, 696, 303 P.3d 1261 (2013). There are three exceptions to the general rule: (1) it involves a pure legal question arising on proved or admitted facts that is finally determinative of the case, (2) considering it is necessary to serve the ends of justice or prevent the denial of fundamental rights, or (3) the trial court was right for the wrong reason. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

Because the Due Process Clause to the United States Constitution requires minimum procedural safeguards before revoking an individual's probation, it implicates a fundamental due process right. A defendant is not entitled to the same rights owed in a criminal prosecution. *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008); *State v. McGill*, 51 Kan. App. 2d 92, 96, 340 P.3d 515 (2015). But such minimum due process rights include written notice of the probation violations alleged. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). The Kansas probation revocation statutory requirements satisfy all the constitutional due process requirements. *Hurley*, 303 Kan. at 582.

On appeal, Keith cites *State v. Scott*, No. 115,432, 2017 WL 2210442 (Kan. App. 2017) (unpublished opinion), as persuasive authority for adequate notice of a probation violation. This court held that Gary Scott's due process rights were violated when the State presented one reason for revoking probation (unknown drug use) but the trial court revoked Scott's probation for a different reason (abusing drugs legally prescribed to Scott). The *Scott* court's rationale turned primarily on Scott's ability to defend against the allegations. Scott did not contest the State's allegation that he was under the influence.

But the trial court "'moved the goal posts'" after he presented the defense that he was under the influence of prescription medications rather than alcohol or illegal drugs. 2017 WL 2210442, at *5.

The trial court here did not "move the goal posts" in this way. The State gave notice of the acts that Keith allegedly committed with enough specificity for Keith to mount a defense. The motion to revoke probation alleged the following:

> "Per Kansas City Missouri police report #KC19091463 from incident dated December 1, 2019, the defendant was booked on a 24-hour investigative hold for a stolen auto following a motor vehicle crash. It was also noted that the defendant, who has a suspended driver's license, was the sole occupant of the vehicle."

This case is unlike *Scott*, but like *McGill*. On appeal, Dajuan McGill argued that his due process rights were violated because there was no specific allegation that he had committed a new crime. Instead, the warrant alleged that "[o]n 4/25/13 and 5/6/13, the defendant provided false paychecks to his ISO." 51 Kan. App. 2d at 97. Importantly, this statement does not name a crime or specify the elements of the crime. Nevertheless, the trial court found that McGill committed the crime of making a false information and revoked his probation. This court held that he received proper notice of the probation violation and had received the minimum due process rights required. 51 Kan. App. 2d at 97.

Just as in *McGill*, the State here alleged facts rather than a specified crime. Keith fails to cite authority to support his argument that the State must include the statute which Keith violated in committing a new crime. The terms "stolen auto" and "suspended driver's license," when coupled with the reference to the police reports and the dates these crimes allegedly happened, provided Keith with sufficient notice of the State's allegations of new crimes.

*The trial court did not rely on unsubstantiated and unreliable hearsay.*

Second, Keith argues that the trial court erred by revoking his probation based solely on unsubstantiated hearsay. He correctly notes that the State's only witness had no first-hand knowledge of Keith committing the alleged new crimes and restated what other officers had reported about the incident. The witness' only direct knowledge was based on the interview she conducted with Keith in the hospital the next day when he admitted to possessing a firearm. Keith objected to the hearsay, but the trial court overruled the standing objection without explaining why.

In a probation revocation hearing, the trial court may for good cause dispense with the probationer's right to confront witnesses. *Graham*, 272 Kan. at 6; see *State v. Yura*, 250 Kan. 198, 207-08, 825 P.2d 523 (1992); *State v. Palmer*, 37 Kan. App. 2d 819, 825-26, 158 P.3d 363 (2007). In deciding whether good cause exists, the trial court must evaluate:  (1) the State's explanation for the impracticality or undesirability of bringing the witness and (2) the reliability of the evidence offered in place of in-person testimony. 37 Kan. App. 2d at 826.

On appeal, Keith asserts that the trial court erred in relying on unsubstantiated and unreliable hearsay to revoke his probation. He claims the hearsay at issue here falls short of the standard set in *Graham*. In *Graham*, a probation officer, who was certified to conduct urinalysis testing, testified that Graham field-tested positive for drugs. "The probation officer substantiated the unadmitted LabCorp reports, giving the reports a substantial indicia of reliability." 272 Kan. at 6-7.

Here, Detective Hernandez' interview with Keith and her later interviewing testimony at the probation revocation hearing substantiated the unadmitted police reports, giving the reports a substantial indicia of reliability. Indeed, Keith's statements to Detective Hernandez substantiated his firearm possession when he admitted that he

carried the firearm for self-defense in his interview with Hernandez. Also, Keith substantiated the fact that he took the vehicle when he told Hernandez that he thought he was test driving the car. Thus, when Keith told Hernandez that he believed he was test driving the car, he implicitly conceded that he had possession of the car. Also, Keith's statement to Hernandez that auction employees chased him down substantiates the allegation that he did not have permission to drive the vehicle. Thus, the trial court did not rely on unsubstantiated and unreliable hearsay in revoking Keith's probation.

*No possession of a weapon as a condition of probation*

As with Keith's due process argument about sufficient notice of the allegations against him, Keith concedes that he did not challenge the constitutionality of the probation condition. His failure is important because constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. There are some exceptions to this general rule, which we previously set out in this opinion. But Keith failed to specifically argue an exception and reasons why we should consider this issue.

As an example, Keith argues that the trial court erred in revoking his probation because the condition of probation which requires him not to possess a firearm is in violation of his constitutional rights under § 4 of the Kansas Constitution Bill of Rights. In support of his argument, Keith provides only conclusory assertions and one substantive citation to a 1905 case which interpreted a previous version of § 4.

Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). In *Godfrey*, 301 Kan. at 1043-44, and *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court warned that Supreme Court Rule 6.02(a)(5) would be strictly enforced,

8

and litigants who failed to comply with this rule risked a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Thus, we conclude that this issue is waived or abandoned.

*Did the Trial Court Err in Calculating Keith's Criminal History?*

Keith argues that the trial court improperly scored his criminal history, resulting in a longer underlying prison sentence. The State agrees that the trial court erred in calculating Keith's criminal history score. Because the PSI report did not contain enough information for an accurate criminal history score, this court should remand for a hearing to determine the correct criminal history score.

Appellate courts can review a claim that the sentencing court erred in classifying a prior conviction on appeal from a judgment of conviction. K.S.A. 2018 Supp. 21-6820(e)(3). Classification of prior convictions for criminal history purposes involves interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018). Statutory interpretation is a question of law subject to unlimited review. 307 Kan. at 555.

The State has the burden of establishing criminal history by a preponderance of the evidence. K.S.A. 2018 Supp. 21-6814; *State v. Ewing*, 310 Kan. 348, 359, 446 P.3d 463 (2019).

Keith argues that his Missouri municipal ordinance violations cannot be used to calculate his criminal history. First, he argues that the State failed to prove his criminal history score by a preponderance of the evidence. Second, he argues that his Missouri municipal ordinance violations are not "out-of-state convictions" as defined by K.S.A. 2018 Supp. 21-6811(e). Third, he argues that they are not crimes.

The State concedes the first point: it failed to prove Keith's criminal history by a preponderance of the evidence. The State asks us to remand this case to the trial court to determine if Keith's criminal history was properly scored. Keith asks this court to instead assign a criminal history score of I and remand for resentencing.

*Keith's Missouri municipal ordinance violations are considered "out-of-state convictions."*

Keith committed his crimes in March 2019, so the law in effect at that time controls his sentence. Under the KSGA, a defendant's sentence depends on the crime of conviction and the defendant's criminal history score. K.S.A. 2018 Supp. 21-6804(d). The KSGA counts "[o]ut-of-state convictions" in a defendant's criminal history score. K.S.A. 2018 Supp. 21-6811(e). "Out-of-state convictions" are "[c]onvictions or adjudications occurring within the federal system, other state systems, the District of Columbia, [and] foreign, tribal or military courts." K.S.A. 2018 Supp. 21-6811(e)(4).

Keith contends that Missouri municipal ordinance violations are not included in the K.S.A. 2018 Supp. 21-6811(e) list of out-of-state convictions. He argues that he was convicted in a municipal court rather than a Missouri state court, and so his convictions were not from "other state systems." He also argues that the convictions cannot be considered "foreign" under the plain meaning of K.S.A. 2018 Supp. 21-6811(e)(4).

But Keith's argument fails because Missouri municipal courts are part of the Missouri "state system." First, Mo. Rev. Stat. § 479.010 states the following: "Violations of municipal ordinances shall be heard and determined only before divisions of the circuit court." Therefore, the municipal court which heard and determined Keith's municipal ordinance violations is a division of the Missouri circuit court. Second, in defining the duties and powers of a municipal judge, Mo. Rev. Stat. § 479.070 clarifies that the docket and records kept by a municipal judge are records of the circuit court. Finally, Mo. Rev.

Stat. § 479.200 assigns an appeal from a municipal court bench trial to the circuit court. The defendant has a right of trial de novo before a circuit judge or associate circuit judge. In short, by law, the municipal court is a division of the Missouri circuit court. Thus, Missouri municipal courts fall under the "other state systems" category in K.S.A. 2018 Supp. 21-6811(e)(4).

*Keith's Missouri municipal ordinance violations cannot be classified based on the PSI report in the record.*

Keith argues that his municipal ordinance violations cannot count in his criminal history score because they are not crimes under Missouri law. The State concedes that they were not properly counted, but disputes that they could not be properly counted. The record does not contain enough information to classify Keith's prior convictions because the record does not show whether Keith's convictions were misdemeanors or ordinance violations.

Classifying an out-of-state conviction for criminal history purposes is a two-step process. The trial court must first classify the crime as a felony or misdemeanor, according to the convicting jurisdiction. Then, the trial court classifies the crime as either a person or nonperson crime. Here, Keith disputes the classification of his convictions as misdemeanors. K.S.A. 2018 Supp. 21-6811(e) describes the process as follows:

> "(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction.
> (A) If a crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas.
> (B) If a crime is a misdemeanor in the convicting jurisdiction, the state of Kansas shall refer to the comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed to classify the out-of-state crime as a class A, B or C misdemeanor. If the comparable offense in the state of Kansas is a felony, the out-of-state crime shall be

11

classified as a class A misdemeanor. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall not be used in classifying the offender's criminal history.

(C) If a crime is not classified as either a felony or a misdemeanor in the convicting jurisdiction, the state of Kansas shall refer to the comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed to classify the out-of-state crime as either a felony or a misdemeanor. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall not be used in classifying the offender's criminal history."

Keith asserts that Missouri municipal ordinance violations are not "crimes" and, thus, they cannot be included in his criminal history score under K.S.A. 2018 Supp. 21-6811(e). Keith points to several Missouri cases to show that, under Missouri law, ordinance violations are only quasi-criminal and are not considered crimes. Keith further cites this court's statement in *State v. Guenther*, No. 116,386, 2018 WL 2073521 (Kan. App. 2018) (unpublished opinion). This court ruled that "because Guenther's Missouri ordinance violations *contain no language classifying them as either misdemeanors or felonies* and are considered quasi-criminal under Missouri law, the trial court erred by using Guenther's violations for criminal history purposes." (Emphasis added.) 2018 WL 2073521, at *12. Finally, Keith correctly cites our Supreme Court's decision in *State v. Smith*, 309 Kan. 929, 441 P.3d 472 (2019). He argues that our Supreme Court has ruled that Missouri municipal ordinance violations are not crimes under Missouri law and are not properly included in criminal history calculations.

But our Supreme Court in *Smith* addressed only municipal ordinance violations which were neither felonies nor misdemeanors in the convicting jurisdiction. Robin Smith argued that her Lake Lotawana, Missouri ordinance violation for endangering the welfare of a child was not a criminal conviction because Missouri considers municipal ordinance violations only quasi-criminal. Our Supreme Court reviewed K.S.A. 2015 Supp. 21-6811(e)(2) for guidance on classifying municipal ordinance violations. The

*Smith* court also noted a more recent amendment, adding K.S.A. 2018 Supp. 21-6811(e)(2)(C) to address when a crime is not classified as either a felony or a misdemeanor in the convicting jurisdiction. But the *Smith* court did not apply this amendment to Smith retroactively.

Applying K.S.A. 2015 Supp. 21-6811(e)(2), we note that the *Smith* court discussed the significance of the fact that the convicting jurisdiction classified some acts as felonies or misdemeanors, but not others. "When, as here, the convicting jurisdiction uses felony or misdemeanor classifications, the statute's plain language precludes the district court's designation of this offense as a misdemeanor because Smith's ordinance violation is neither a felony nor a misdemeanor 'according to the convicting jurisdiction.'" 309 Kan. at 939. The *Smith* court further stressed this distinction of felony or misdemeanor classifications versus ordinance violations. "[T]he Lake Lotawana Municipal Code, which is the applicable jurisdiction, cannot serve as authority for such an upgrading because it specifically lists some other offenses as misdemeanors—but not this one, i.e., endangering a child's welfare." 309 Kan. at 939. In short, K.S.A. 2015 Supp. 21-6811(e)(2) provided no instruction for classifying offenses which were not felonies or misdemeanors, like Missouri municipal ordinances. Thus, the trial court in *Smith* erred by including Smith's municipal ordinance violations in her criminal history score.

The *Smith* court did not need to apply the 2018 amendment which addresses crimes that are not classified as either felonies or misdemeanors in the convicting jurisdiction. See K.S.A. 2018 Supp. 21-6811(e)(2)(C). But this court addressed the effect of the amendment in *State v. Cross*, No. 121,517, 2020 WL 5079891 (Kan. App. 2020) (unpublished opinion). Collan Leigh Cross claimed that the trial court erred by scoring his prior Missouri municipal ordinance violations as misdemeanors. The *Cross* court stressed that the operative word in K.S.A. 2018 Supp. 21-6811(e)(2)(C) is the word "crime." The *Cross* court's application of our Supreme Court's ruling in *Smith* is persuasive. The *Cross* court cited several Missouri cases stating that a municipal

13

ordinance violation is not a crime, as well as our Supreme Court's ruling in *Smith* that a Missouri ordinance violation is not a crime under Missouri law. The plain language of K.S.A. 2018 Supp. 21-6811(e)(2)(C) states the following: "If a *crime* is not classified as either a felony or a misdemeanor in the convicting jurisdiction . . . ." (Emphasis added.) But a municipal ordinance violation is not a crime in Missouri. Thus, this court vacated Cross' sentence and remanded for resentencing. 2020 WL 5079891, at *5.

Further, the *Cross* court repeated our Supreme Court's distinction between municipal code offenses, which are listed as misdemeanors, and offenses, which are not. In *Smith*, endangering a child's welfare was not a misdemeanor under Lake Lotawana Municipal Code. Similarly, the *Cross* court noted that the Kansas City, Missouri Municipal Code classified some crimes as misdemeanors, giving the example of Section 14-60(c)(2) (second violation of failing to spay or neuter a pit bull). But the violations Cross committed were not classified as misdemeanors. E.g., Section 50-47 (violation of a protection order). In short, Missouri municipal code offenses are not crimes unless they contain language classifying them as either misdemeanors or felonies. See *Guenther*, 2018 WL 2073521, at *12.

The trouble here is that the PSI report's column for statute/ordinance number is blank. Keith argues that without this information the classifications of his convictions are unknown, and it is impossible to determine whether his convictions were properly classified. The State does not argue that the trial court deduced which ordinances Keith violated based on the name of the crime and the jurisdiction before the court determined his criminal history. Instead, the State concedes that the PSI report does not provide enough information to support the trial court's criminal history score calculation.

Keith also argues that the PSI report does not show whether he had counsel and whether the sentences involved jail time. A person accused of a misdemeanor has a Sixth Amendment right to counsel if the sentence upon conviction involves jail time, even if

14

probation is granted. *State v. Youngblood*, 288 Kan. 659, Syl. ¶ 2, 206 P.3d 518 (2009). Thus, Keith correctly contends that the State must produce evidence that Keith had the benefit of counsel if his convictions were misdemeanors with the possibility of jail time.

Keith correctly argues that a remand is required, saying that "at a minimum" the State must show that his criminal history score is correct. Keith argues that when the record does not contain substantial competent evidence to support a trial court's criminal history classification, a remand is required to allow the trial court to determine the appropriate classification. See *Ewing*, 310 Kan. at 360; *State v. Obregon*, 309 Kan. 1267, 1275-76, 444 P.3d 331 (2019). Keith is correct and the State concedes this point, requesting a remand for a hearing on Keith's criminal history.

But then Keith contradicts himself, claiming that this court could dispense with such a hearing by assigning him a criminal history score of I. This argument rests on the assumption that the municipal codes do not classify his convictions as misdemeanors but are only ordinance violations. The PSI report lists no statute/ordinance numbers. Both Keith and the State argue that this makes the convictions impossible to classify. Nevertheless, Keith assumes that the Missouri ordinance violations contain no language classifying them as either felonies or misdemeanors. Notably, Keith does not provide the ordinances or otherwise support this argument. Issues not adequately briefed are deemed waived or abandoned. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

The State has the burden to show Keith's criminal history score. Keith correctly claims that his criminal history score would be I rather than D if the trial court did not count his three Missouri municipal ordinance violations. See K.S.A. 2018 Supp. 21-6804. If the municipal ordinance contains no language classifying the crime as a felony or misdemeanor, then the municipal ordinance violations cannot count toward Keith's criminal history score. See *Cross*, 2020 WL 5079891, at *4-5. As Keith correctly

15

acknowledged, a remand is required to allow the trial court to determine the appropriate classification. See *Obregon*, 309 Kan. at 1275-76.

For the preceding reasons, we vacate Keith's sentence and remand his case for a hearing on his criminal history score and resentencing.

Affirmed in part, vacated in part, and remanded with directions.